The last matter on our calendar is Levy v. Basf Metals Ltd. Good morning, Your Honors. I'm Susan Levy, Plaintiff Pro Se, and I'm admitted to the Second Circuit as well. Good morning. I just want to highlight two points that were not in my brief, one with the supplemental record, which was just served, and this is relating to the discovery rule. The issue is statute of limitations. When do you think the right to sue accrued? 2014, because this was a self-concealed fraud or a price-fixing manipulation. It did not come into the public record until 2014 or thereabouts. That's when the class action complaint was filed, and that's when I found out about it. If there were news reports a little bit before then, you could say 2013. How did your injury occur? Well, the losses occurred in 2008, and so the defense team is arguing that I should have been on constructive notice back in 2008 under the discovery accrual rule, and even if that were so . . . I mean, in my brief, I cite the very strong cases, Levitt and Starr and Lentell. All these cases go through a very interesting analysis of triggering data that can put a person on inquiry notice, storm warnings, and each fact and each claim has to have a triggering event. But even if you were to assume, just arguendo, that I should have had some kind of inkling in 2008 of this self-concealed fraud, the second half of the discovery rule says that we consider what a plaintiff does. Does she engage in due diligence? Does she press her case? Does she try and find out her claim? And in that case, I did. I did everything humanly possible I could because I was very eager to get to the bottom of it. So I think under the totality of the circumstances, I fit well within the rule. Now, I also argued, and Judge Woods recognized, that this was a self-concealing fraud. And I just would like to point out on page A458 . . . I did not put this in my brief, but Judge Woods said that indeed the only thing she potentially did not already know prior to commencement of the class action is the theory of price suppression during the time of the fixing calls. So there was a concession that I did not know about it. If I knew about it, then I would have actual knowledge, and I agree I had to take action. So the only question is, are we going to say constructive knowledge or storm warnings as Judge Buchwald talks about in the Libor case, which I think is very much on point. When did I know about this? And 2014, I got a copy of the class complaint. And I read it for ten months. I deliberated over it. I talked to experts. And I did bring my own case for a variety of reasons. I didn't copy the complaint. I reanalyzed it. And how can I copy something I own? Those are my claims. I used it. I analyzed it. And no one else has gotten precluded except me. I'm also a member of the class action. The class action is defined from 2008 to 2014, NYMEX future platinum customers, such as myself. So with respect to equitable tolling, the other part of the record, which was just accepted on September 24th in a supplemental appendix, which was just filed, it's essay pages 189 and 190. And I adopted these and incorporated these paragraphs into my own complaint. It says right here, this is from the class action complaint. Defendants and their co-conspirators concealed their wrongdoing in manipulating the fixing. Thus, the statute of limitations relating to the claims for relief alleged herein was told. Due both to defendants and their co-conspirators' affirmative acts of concealment and the inherently self-concealing nature of their private unregulated conduct. So that's a claim in the class action complaint. And that's my claim. And the judge found it was self-concealing. These are very hard claims to unmask. It's like finding a needle in a haystack. And so I don't understand why I would be precluded at this stage. And I can give a deposition, and I can go through everything I did. I did as much as I could, and I think the standard is reasonableness. I mean, I'm an attorney myself, so I had an advantage. And they said, you know, I was in the first class action. That's true. I tried to find it out in the first class action. I couldn't find it out. It finally came to light, thankfully. And I think, you know, this was something that obviously really impacted my life. I wouldn't be here if it hadn't. And I think that the lower court misunderstood me because when I read the decision, I didn't think that was me he was describing. Someone who is trolling for claims and copying complaints. I worked hard, and I spoke to experts. I've had lawyers. I've done everything. And I think finally I'm on to something. I think there was a terrible price fixing. I think it's affected a lot of people. And if I have a chance to come into court, I would like that. And, you know, I appreciate . . . I just want to thank you for listening. I mean, this is a very venerable panel. Thank you very much. I'll sit down. Thank you. And, of course . . . If you have any questions . . . Oh, thank you. The last case on our calendar is on submission, so I'll ask the clerk to adjourn court. Court is adjourned.